**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

DANA LYNN COLE,

                    1:16-cv-05444-NLH

        Plaintiff,

                    **OPINION**

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

**APPEARANCES:**

SAMUEL FISHMAN
11450 BUSTLETON AVENUE
PHILADELPHIA, PA 19116
    On behalf of Plaintiff

MATTHEW JARED LITTMAN
MELISSA KAY CURRY
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET
6TH FLOOR
PHILADELPHIA, PA 19123
    On behalf of defendant

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("Social Security benefits") under Title II and Title XVI of the Social Security Act. 42 U.S.C. § 401, et seq. The issue before the Court is whether the Administrative Law Judge ("ALJ") erred

in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since her alleged onset date of disability, August 1, 2009. For the reasons stated below, this Court will reverse the ALJ's decision and remand the matter for further proceedings.

I.  BACKGROUND AND PROCEDURAL HISTORY

On January 5, 2012, Plaintiff, Dana Lynn Cole, filed an application for disability benefits, claiming that since August 1, 2009, when she was 34 years old, her severe impairments of fibromyalgia, arthritis, learning disorder, post-traumatic stress disorder, anxiety, depression and personality disorder have rendered her completely disabled and unable to work. Prior to her claimed disability, Plaintiff worked as a mail handler.

After her claim was denied at the administrative levels, Plaintiff appeared before an ALJ for a hearing on February 24, 2014. On December 2, 2014, the ALJ held a supplemental hearing.[1] The ALJ determined that Plaintiff was not disabled because she retained the ability to perform light work. Plaintiff appealed the decision. The Appeals Council reviewed the ALJ's decision,

---

[1] Plaintiff points out that even though a vocational expert ("VE") was present at both hearings, the ALJ did not take any testimony from the VE at either hearing. This is one basis for Plaintiff's appeal as discussed below.

and upheld it, thus rendering it as final.  Plaintiff now seeks this Court's review.

**II. DISCUSSION**

    **A.    Standard of Review**

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for Disability Insurance Benefits.  <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001); <u>Sykes v. Apfel</u>, 228 F.3d 259, 262 (3d Cir. 2000); <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)(quoting <u>Consolidated Edison Co. V. NLRB</u>, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Id.</u>  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  <u>See</u> <u>Brown v. Bowen</u>, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him. Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004). In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182. However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards. Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B. Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability

insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis. See 20 C.F.R. § 404.1520. This five-step process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4. If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy. If he is incapable, he will be found "disabled." If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f). Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence. See id. In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other

kind of substantial gainful employment he is able to perform."
Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C. Analysis**

In this case, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability (step one). The ALJ next found that Plaintiff's fibromyalgia, arthritis, learning disorder, post-traumatic stress disorder, anxiety, depression and personality disorder were severe (step two). The ALJ then found that Plaintiff's impairments did not meet the medical equivalence criteria (step three). At step four, the ALJ found that Plaintiff was not capable of performing her previous job as a mail handler, but the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform other jobs at the unskilled light work level,[2] which jobs are in significant numbers in the national

---

[2] See 20 C.F.R. § 404.1567 ("Physical exertion requirements. To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy. These terms have the same meaning as they have in the Dictionary of Occupational Titles, published by the Department of Labor. In making disability determinations under this subpart, we use the following definitions: . . .

(b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be

economy (step five).

Plaintiff argues that the ALJ erred by not relying upon the testimony of a Vocational Expert ("VE") despite the presence of significant nonexertional limitations.[3] Specifically, Plaintiff contends that when significant nonexertional limitations are present, and when, as here, the ALJ recognizes Plaintiff's nonexertional limitations in his determination of Plaintiff's

---

very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time....").

[3] Plaintiff also argues that the ALJ erred by failing to account for his own Psychiatric Review Technique ("PRT") findings which identified nonexertional limitations in social functioning. Because the Court finds that the ALJ did not properly support his burden at step five by failing to consider Plaintiff's nonexertional limitations singularly or in combination with her exertional limitations, and did not base his decision on a proper SSR, vocational expert testimony, or other evidence in addition to the Medical-Vocational Guidelines or "Grids," and will remand the matter on that basis, the Court need not address Plaintiff's second argument. Even if the ALJ had included Plaintiff's social functioning limitations in the RFC, he would have still erred at step five by solely following the Grids. The Court strongly suggests, however, that on remand the ALJ address Plaintiff's argument that the ALJ's RFC determination improperly failed to take into account his finding at step two that Plaintiff suffers from a moderate limitation in social functioning.

9

RFC, the ALJ may not rely solely upon the "Grids" or "Grid rules," which is a group of clear rules that dictate a finding of disabled or not disabled based on a claimant's vocational factors (age, education, and work experience) and individual RFC. See Medical-Vocational Guidelines of Appendix 2 of 20 C.F.R. pt. 404, subpt. P, app. 2. By not taking testimony from a VE to assess what unskilled light work jobs would be available when considering Plaintiff's RFC, which included nonexertional limitations, Plaintiff argues that ALJ committed reversible error. This Court agrees.

The SSA regulations explain what constitutes exertional and nonexertional limitations that limit a person's ability to meet certain demands of a job. See 20 C.F.R. § 404.1569a. "When the limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, affect only your ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling), we consider that you have only exertional limitations." Id. Impairments and related symptoms, such as pain, that only affect a person's ability to meet the demands of jobs other than the strength demands, are considered nonexertional. Id. Examples of nonexertional limitations or restrictions include: difficulty functioning

because you are nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty in seeing or hearing; difficulty tolerating some physical features of certain work settings, e.g., you cannot tolerate dust or fumes; and difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching. Id.

The Regulations explain, "Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications." 20 C.F.R. § 404.1566(b). In making this step five determination, an ALJ is required to take notice of reliable job information available from various governmental and other publications, such as the Dictionary of Occupational Titles, County Business Patterns, Census Reports, Occupational Analyses, and Occupational Outlook Handbook. Id. The ALJ may also use the services of a vocational expert. Id. A VE, when presented with a hypothetical claimant mirroring the relevant impairments of the current disability applicant, can offer specific examples of available jobs or opine on the applicant's

ability to perform a certain range of work.  A vocational specialist is not always required, however, and an ALJ may solely rely upon the Grids in his step five analysis.  See SSR 85-15.

To improve the uniformity and efficiency of the disability determination process, in 1978 the SSA promulgated the Medical-Vocational Guidelines, or "Grids."  Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000) (explaining that prior to 1978, after a claimant's limitations and abilities had been determined at a hearing, a vocational expert ordinarily would testify as to whether work existed that the claimant could perform).  The SSA's Program Policy Statement SSR-85-15 explains that the Grids discuss the relative adjudicative weights which are assigned to a person's age, education, and work experience, and the three tables in Appendix 2 illustrate the interaction of these vocational factors with his or her RFC, which is expressed in terms of sedentary, light, and medium work exertion.

The Grids reflect the potential occupational base of unskilled jobs for individuals who have severe impairments which limit their exertional capacities: approximately 2,500 medium, light, and sedentary occupations; 1,600 light and sedentary occupations; and 200 sedentary occupations — each occupation

representing numerous jobs in the national economy. SSR-85-15. Where individuals also have nonexertional limitations of function or environmental restrictions, the table rules provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs within these exertional ranges which would be contraindicated by the additional limitations or restrictions. Id. Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion that work exists that the claimant can perform. Sykes, 228 F.3d at 263.

The Third Circuit has expressly directed that when a claimant's RFC contains nonexertional impairments in addition to exertional impairments, and even if the claimant's exertional impairments would not preclude working at level identified in the Grids, an ALJ cannot rely solely upon the Grids in making the step five determination of whether jobs exist in the national economy that the claimant may perform. The Third Circuit explained:

> When a claimant has an additional nonexertional impairment, the question whether that impairment diminishes his residual functional capacity is functionally the same as the question whether there are jobs in the national economy that he can perform given his combination of impairments. The grids do not purport to answer this

question, and thus under Campbell the practice of the ALJ determining without taking additional evidence the effect of the nonexertional impairment on residual functional capacity cannot stand.

Sykes, 228 F.3d at 270 (citing Heckler v. Campbell, 461 U.S. 458, 467 (1983)).

Following the Third Circuit's decision in Sykes, the SSA issued "Acquiescence Ruling 01-1(3) - Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000) — Using the Grid Rules as a Framework for Decisionmaking When an Individual's Occupational Base is Eroded by a Nonexertional Limitation — Titles II and XVI of the Social Security Act." That Ruling provides that in Delaware, New Jersey, Pennsylvania or the Virgin Islands,

> In making a disability determination or decision at step 5 of the sequential evaluation process (or the last step in the sequential evaluation process in continuing disability review claims), we cannot use the grid rules exclusively as a framework for decisionmaking when an individual has a nonexertional limitation(s). Before denying disability benefits at step five when a claimant has a nonexertional limitation(s), we must: (1) take or produce vocational evidence such as from a vocational expert, the DOT or other similar evidence (such as a learned treatise); or (2) provide notice that we intend to take or are taking administrative notice of the fact that the particular nonexertional limitation(s) does not significantly erode the occupational job base, and allow the claimant the opportunity to respond before we deny the claim.

AR 01-1(3).[4]

---

[4] AR 01-1(3) further provides, "This Ruling does not apply to claims where we rely on an SSR that includes a statement explaining how the particular nonexertional limitation(s) under

14

Here, the ALJ determined Plaintiff's RFC to be as follows:

> The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can frequently balance, occasionally stoop, kneel, crouch, crawl and climb ramps or stairs and never climb a ladder, rope or scaffold, and must avoid even moderate exposure to fumes, odors, dusts, gases and poor ventilation, and she is limited to simple, repetitive work. She is capable of understanding, remembering, and carrying out simple instructions, making judgments that are commensurate with the functions of unskilled work (i.e., simple work-related [d]ecisions), responding appropriately to supervision, co-workers, the general public and usual work situations, and dealing with changes in a routine work setting.

(R. at 23.) Based on this RFC, the ALJ concluded that Plaintiff was capable of performing the exertional components of light work, and that Plaintiff's nonexertional limitations in her RFC had "little or no effect on the occupational base of unskilled light work." (Id. at 40.) The ALJ explained,

> Social Security Rulings 83-14 and 85-15 state that sedentary and light work do not require more than occasional stooping and bending and do not require any crouching. Social Security Ruling 83-14 states that inability to ascend or descend ladders or scaffolding is not a significant restriction at any exertional level. Social Security Ruling 85-15 states that restrictions against climbing, balancing, unprotected elevations and

---

consideration in the claim being adjudicated affects a claimant's occupational job base. When we rely on such an SSR to support our finding that jobs exist in the national economy that the claimant can do, we will include a citation to the SSR in our determination or decision." The ALJ here cites to SSR 85-15 and 84-13 and 96-9p, none of which supports the ALJ's decision specific to Plaintiff's RFC.

15

> proximity to dangerous moving machinery are not significant
> at any exertional level.  This ruling also states that
> kneeling and crawling limitations do not have a significant
> impact on the broad world of work.  According to Social
> Security Ruling 96-9p, the need to avoid even all exposure
> to extreme cold, extreme heat, wetness, humidity,
> vibration, or unusual hazards such as moving mechanical
> parts of equipment, tools, or machinery ; electrical shock;
> working in high, exposed places; exposure to radiation;
> working with explosives; and exposure to toxic, caustic
> chemicals would not result in significant erosion of the
> sedentary occupational base.  Thus, the sedentary and light
> unskilled job base is only minimally affected by the
> claimant's nonexertional limitations.  There are many jobs
> existing in significant numbers in the national economy
> which the claimant is able to perform.

(Id.)

The problem with this assessment is two-fold.  First, the ALJ does not mention the nonexertional limitation that Plaintiff "avoid even moderate exposure to fumes, odors, dusts, gases and poor ventilation" and its effect, standing alone, on the sedentary and light unskilled job base.  SSR 85-15 specifically singles out the environmental exposure restriction, and provides that where "a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust," but where "an individual can tolerate very little noise, dust, etc., the impact on the ability to work would be considerable because very few job environments are entirely free of irritants, pollutants,

16

and other potentially damaging conditions." SSR 85-15. The Program Policy Statement therefore directs that where "the environmental restriction falls between very little and excessive, resolution of the issue will generally require consultation of occupational reference materials or the services of a [Vocational Specialist]." SSR 85-15.

If an ALJ "wishes to rely on an SSR as a replacement for a vocational expert, it must be crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base." Allen v. Barnhart, 417 F.3d 396, 407 (3d Cir. 2005). Not only is SSR 85-15 not probative as to the environment restrictions, it compels the opposite result.

Second, the ALJ does not consider Plaintiff's nonexertional limitation to "avoid even moderate exposure to fumes, odors, dusts, gases and poor ventilation" in combination with her exertional limitations. Where a claimant has exertional and nonexertional impairments, testimony of a vocational expert or other similar evidence, such as a learned treatise, in addition to the Grids is required for the ALJ to meet his burden of establishing that there are jobs in the national economy that someone with the claimant's combination of impairments can

17

perform. Sykes, 228 F.3d at 273; AR 01-3(3). The ALJ failed to provide additional evidence beyond the Grids to support his conclusion that Plaintiff was capable of unskilled light work.

In steps one through four, the ALJ in this case has appeared to have conducted a thorough analysis of the record evidence and a thoughtful discussion of his findings relative to that analysis. It is perplexing why, in a case that presents many nonexertional limitations, as well as the presence of a VE at both hearings, the ALJ did not support his step five burden with evidence in addition to the Grids as required by the Third Circuit and explicitly directed to do so by the SSA in AR 01-1(3). It seems possible that provided the proper hypothetical, the VE would have testified that unskilled light work jobs that do not expose a person to fumes, odors, dust, gases exist in significant numbers in the national economy.[5] Nonetheless,

---

[5] See, e.g., Rini v. Commissioner of Social Security, 2017 WL 2656017, at *4 (D.N.J. 2017) (the ALJ asking if there were jobs in the national economy for an individual who was capable of the full range of light or medium work, limited to unskilled work, with the individual being off task up to ten percent of the time and in which exposure to fumes, odors, and dusts must be avoided, and the VE responding affirmatively and giving several examples of viable jobs, including box maker (medium), bagger (medium), ticket printer (light), and tagger (light)); Rivera v. Commissioner of Social Security, 2016 WL 4718143, at *7 (D.N.J. 2016) (the ALJ posing the hypothetical assuming an individual with Plaintiff's education, training and work experience, that is "limited to the full range of light work, ... [and] simple,

18

because the ALJ failed to comply with the requirements set forth in Sykes and AR 01-1(3), the Court must reverse the Commissioner's decision to deny Plaintiff's claim, and remand the matter so that the ALJ may employ the proper methodology in the step five analysis.  We express no opinion on what conclusion should or would be reached after the application of the required methodology.

**III. Conclusion**

For the reasons expressed above, the ALJ erred in his determination that Plaintiff was not totally disabled because she is capable of performing jobs that exist in significant numbers in the national economy.  Therefore, the Court will reverse the decision of the Commissioner, and remand the matter for further consideration consistent with this Opinion.

An accompanying Order will be issued.


Date:  September 28, 2017          s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.

---

routine, repetitive unskilled tasks," with "frequent postural maneuvers," who must avoid "concentrated exposure to fumes, odors, dust and gasses," and the VE testifying that jobs existed in the national economy that this person could perform).